UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| CAROL JONES, individually, and as Special Administrator of the Estate of Ruth Butler, deceased, | * * * * | CIV. 09-3011-RAL |
|---|---|---|
| Plaintiff, | * * | |
| vs. | * * | OPINION AND ORDER COMPELLING ARBITRATION |
| GGNSC Pierre LLC, d/b/a Golden Living Center Pierre, Golden Gate National Senior Care LLC, GGNSC Equity Holdings LLC, GGNSC Clinical Services, LLC, and GGNSC Administrative Services, LLC, | * * * * * * * | |
| Defendants. | * * | |

## I. Introduction

The Defendants in this case seek to compel arbitration under a contract provision specifying binding arbitration "in accordance with the National Arbitration Forum Code of Procedure." The National Arbitration Forum ("NAF"), however, has entered into a Consent Judgment where it no longer arbitrates consumer disputes, such as the one at issue in this case. (Doc. 42 at Exhibit H). A split in authority exists over whether the unavailability of the NAF as a forum for consumer disputes renders arbitration agreements contemplating NAF as a forum unenforceable, or whether the Federal Arbitration Act in such cases requires the Court to appoint an arbitrator. Based on the language of the arbitration contract in this case, the provisions of 9 U.S.C. § 5 and a South Dakota statute, and the circumstances of this case, the Court grants in part Defendants' Motion to Dismiss or Stay Proceedings and for Order

1

Compelling Arbitration (Doc. 34).

## II. Facts Material to Arbitration Issue

Plaintiff Carol Jones is the special administrator of the Estate of Ruth Butler. On September 1, 1995, Ruth Butler signed a durable power of attorney appointing her daughter Carol Jones as her agent to transact business on Ms. Butler's behalf. (Doc. 34 at Exhibit B).

On or about July 9, 2003, Ruth Butler became a resident at a nursing home then run by Beverly Health Care. The Defendants in this case are successors in interest to Beverly Health Care. On behalf of Ms. Butler, Carol Jones executed a series of agreements when placing her mother in the nursing home run by Beverly Health Care. Among these agreements was a Resident and Facility Arbitration Agreement ("Arbitration Agreement"). (Doc. 34 at Exhibit A). The Arbitration Agreement was not the subject of any negotiation between Ms. Jones and Beverly Health Care. Ms. Jones recognized her signature on the agreement, on behalf of her mother, but did not recall the agreement itself. (Doc. 42 at Exhibit C).

The Arbitration Agreement states in relevant part:

The parties to this Arbitration Agreement acknowledge and agree that upon execution, this Arbitration Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the Federal Arbitration Act. It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement, and not by a lawsuit or resort to court process. This

agreement shall be governed by and interpreted under the Federal
Arbitration Act, 9 U.S.C. Sections 1-16.

(Doc. 34 at Exhibit A).

The Complaint alleges that Defendants knew or should have known that Ruth Butler was at high risk for falling and being injured by falling. (Doc. 1 at ¶ 19). On September 6, 2007, while Ms. Butler was in the care of the Defendants, she fell while being transferred by the Defendants' staff. (Id. at ¶ 22). According to the Complaint, Ms. Butler sustained head injuries from the fall that led to her death on September 26, 2007. (Id. at ¶ 22, 41-42). Plaintiff filed a Complaint, invoking diversity jurisdiction under 28 U.S.C. § 1332(a). The Defendants answered. Two months after the answer, Defendants located a copy of the Arbitration Agreement, notified Plaintiff's counsel of the arbitration agreement, and then filed their Motion to Dismiss or Stay Proceedings and for Order Compelling Arbitration.

On July 17, 2009, the NAF, to resolve litigation with the Attorney General for the State of Minnesota, entered into a Consent Judgment. (Doc. 42 at Exhibit H). Under the Consent Judgment, the NAF terminated its involvement in "consumer arbitration" effective July 24, 2009. The Consent Judgment defined "consumer arbitration" to include a dispute, such as this one, "between a business entity and a private individual." Id.

Plaintiff and Defendants agree that the NAF is not an available forum for arbitration of this dispute. Plaintiff requests that the Court find the Arbitration Agreement unenforceable because of the unavailability of the NAF. The Defendants request that the Court appoint a substitute arbitrator under either Section 5 of the Federal Arbitration Act or its state law counterpart, S.D. Codified Laws ("SDCL") § 21-25A-9.

### III. Discussion

## A. Applicable Law

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, applies to "written arbitration provisions in" or "arbitration agreements in" any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Neither party disputes that the Federal Arbitration Act applies to the Arbitration Agreement. Indeed the Arbitration Agreement itself contains as a part of the contract language with the provision: "This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Section 1-16." (Doc. 34 at Exhibit A).

The effect of Section 2 of the Federal Arbitration Act "is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). The Federal Arbitration Act establishes "a liberal federal policy favoring arbitration agreements." Id. Section 2 of the Federal Arbitration Act "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Perry v. Thomas, 482 U.S. 483, 489 (1987) (quoting 9 U.S.C. § 2). The Federal Arbitration Act is "intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements," Southland Corp. v. Keating, 465 U.S. 1, 16 (1984), and preempts state law contrary to its provisions. Perry, 482 U.S. at 490.

The parties do not dispute the applicability of the Federal Arbitration Act, but rather whether Section 5 of the Act or a companion state statute requires substitution of an arbitrator in this case. Section 5 of the Federal Arbitration Act provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be

4

> followed; but if no method be provided therein, or if a method be provided
> and any party thereto shall fail to avail himself of such method, or in
> filling a vacancy, then upon the application of either party to the
> controversy the court shall designate and appoint an arbitrator or
> arbitrators or umpire, as the case may require, who shall act under the said
> agreement with the same force and effect as if he or they had been
> specifically named therein; and unless otherwise provided in the
> agreement the arbitration shall be by a singe arbitrator.

9 U.S.C. § 5.

This is a diversity jurisdiction case, so the Court takes note that South Dakota has a statute similar to 9 U.S.C. § 5. SDCL 21-25A-9 provides:

> Except as provided by chapter 21-25B, if the arbitration agreement
> provides a method of appointment of arbitrators, this method shall be
> followed. In the absence thereof, or if the agreed method fails or for any
> reason cannot be followed, or when an arbitrator appointed fails or is
> unable to act and his successor has not been duly appointed, the court on
> application of a party shall appoint one or more arbitrators. An arbitrator
> so appointed has all the powers of one specifically named in the
> agreement.

SDCL 21-25A-9 is not inconsistent with Section 5 of the Federal Arbitration Act. Indeed, the two provisions are substantially similar. Counsel for the parties themselves drew no material distinction between the two statutes. Under Section 5 of the Federal Arbitration Act, "if no method be provided therein [for appointing an arbitrator] or a method be provided and any party thereto shall fail to avail himself of such method, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator..." 9 U.S.C. § 5. Under the South Dakota statute, "if the agreed method [for appointment of an arbitrator] fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act ..., the court on application of a party shall appoint one or more arbitrators." SDCL 21-25A-9. The South Dakota statute is more clear in covering

5

situations where "the agreed method fails or for any reason cannot be followed." SDCL 21-25A-9. However, the language of Section 5 of the Federal Arbitration Act, particularly when read in view of the "congressional declaration of a liberal federal policy favoring arbitration agreements" has a similar effect to SDCL 21-25A-9. See Moses H. Cone, 460 U.S. at 24.

The Federal Arbitration Act "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." Volt Info. Sciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 477 (1989). In such a circumstance, state law is "pre-empted to the extent that it actually conflicts with federal law – that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). Here, SDCL 21-25A-9 does not stand as an obstacle to the Federal Arbitration Act and thus is not preempted.

## B. Application of Section 5 of the Federal Arbitration Act

There appear to be three decisions from federal courts of appeals that address whether Section 5 of the Federal Arbitration Act applies to a situation similar to what has occurred here. Those three decisions are In re Salomon Inc. Shareholders' Derivative Litigation, 68 F.3d 554 (2d Cir. 1995); Brown v. ITT Consumer Financial Corp., 211 F.3d 1217 (11th Cir. 2000); and Reddam v. KPMG L.L.P., 457 F.3d 1054 (9th Cir. 2006). In In re Salomon, the court was presented with a situation where an arbitration agreement impliedly designated the New York Stock Exchange ("NYSE") as the forum and expressly made arbitration subject to NYSE rules, but the NYSE declined to arbitrate the dispute. In re Salomon, 68 F.3d at 555-56. In Brown, the court was presented with an arbitration agreement quite similar to the one

6

at issue in this case, specifying binding arbitration under the Code of Procedure of the NAF, but the NAF was unavailable for the case. Brown, 211 F.3d 1220-22. In Reddam, the arbitration agreement specified arbitration under the rules of the National Association of Security Dealers ("NASD"), but that organization declined jurisdiction over the parties. Reddam, 457 F.3d at 1056-57. If this Court were to follow the reasoning in In re Salomon, the Court may be led to a conclusion that Section 5 should not be invoked under the circumstances to select a replacement arbitrator. However, this Court finds the reasoning and approach in Brown, Reddam, and the cases that follow those decisions to be more in keeping with the language and purpose of the Federal Arbitration Act. As the Ninth Circuit stated in Reddam, the court in In re Salomon "presented little reasoning," and "the cases upon which it relied were inapposite." Reddam, 457 F.3d at 1060.

In both Brown and Reddam, the court of appeals considered whether the specified forum – in Brown the NAF, and in Reddam the NASD – was an "integral part" of the agreement to arbitrate, as opposed to "an ancillary or logistical concern." Brown, 211 F.3d at 1222; Reddam, 457 F.3d at 1060; see also Zechman v. Merrill Lynch et al., 742 F. Supp. 1359, 1364 (N.D.Ill. 1990) (citing Nat'l Iranian Oil Co. v. Ashland Oil, Inc., 817 F.2d 326 (5th Cir. 1987)). Indeed, when considering the unavailability of the NAF and whether Section 5 of the Federal Arbitration Act authorizes appointment of an arbitrator, other federal district courts have applied the approach from Brown and Reddam of analyzing whether the arbitration forum was integral to the agreement to arbitrate. See Adler v. Dellcom, Inc., 2009 U.S. Dist. Lexis 112204 (E.D. Mich. 2009); Carideo v. Dellcom, Inc., Case No. C06-1772JLR (W.D.Wash. 2009).

Such an approach makes sense. When the reference to arbitration rules or an arbitration forum is merely "an ancillary or logistical concern," the application of Section 5 to appoint a different arbitrator does not do violence to the intentions of the parties. By contrast, when the choice of arbitration forum was integral to the agreement, such that the parties would not have agreed upon arbitration absent the selected forum, application of Section 5 to appoint a substitute arbitrator is more problematical. After all, despite the "liberal federal policy favoring arbitration agreements," Moses H. Cone, 467 U.S. at 24, the Court must be mindful of the parties' intentions as expressed in the terms of an arbitration agreement. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53-54 (1995) (noting that the "central purpose" of the FAA is "to ensure that private agreements to arbitrate are enforced according to their terms") (quoting Volt 489 U.S. at 479 (internal quotation marks omitted)); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985) ("As with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

The question before the Court then becomes whether the choice of the NAF was integral to these parties. As the Reddam court put it, "when a court asks whether a choice of forum is integral, it asks whether the whole arbitration agreement becomes unenforceable if the chosen arbitrator cannot or will not act." Reddam, 457 F.3d at 1060. When ascertaining the meaning of an agreement in a diversity case under South Dakota law, a court starts "by examining the agreement as a whole and giving words their 'plain and ordinary meaning.'" Eagle Ridge Estates Homeowners Ass'n, Inc. v. Anderson, 2010 SD 1, ¶ 5 (quoting Canyon Lake Park L.L.C. v. Loftus Dental P.C., 2005 SD 82, ¶ 17, 700 N.W.2d 729, 734). The South

8

Dakota Supreme Court in Nelson v. Schellpfeffer, 2003 SD 7, 7, 656 N.W.2d 740, 743 summarized state law on contract interpretation as follows:

> "The goal of contract interpretation is to see to it that the mutual intent of the parties is carried into effect. Singpiel v. Morris, 1998 SD 86, 582 N.W.3d 715. The contract is to be read as a whole, making every effort to give effect to all provisions. Crowley v. Texaco, Inc., 306 N.W.2d 871 (S.D. 1981). When the words of a contract are clear and explicit and lead to no absurd consequences, the search for the parties' common intent is at an end. Frost v. Williams, 50 N.W. 964 (S.D. 1892); Giddings v. Nefsy, 212 N.W. 507 (S.D. 1927)."

The arbitration agreement at issue in this case provides for resolution of disputes "exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this agreement, and not by a lawsuit or resort to court process." (Doc. 34 at Exhibit A). This language, first, provides that disputes are to be resolved "exclusively by binding arbitration." At the end of this same sentence, the Arbitration Agreement states that disputes are to be resolved "not by a lawsuit or resort to court process." In between those provisions is the language specifying resolution "in accordance with the National Arbitration Forum Code of Procedure." The clause at issue does not mandate the NAF per se, although reference to the Code of Procedure of the NAF is an implicit selection of the NAF as the arbitration forum and the NAF Code designated the NAF as the exclusive administrator of its rules. (Doc. 42 at Exhibit G); see Reddam, 457 F.3d 1054, 1059-60.

The Arbitration Agreement in the case at hand has a severance provision as follows: "In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall be effective."

(Doc. 34 at Exhibit A). To the extent that the Arbitration Agreement impliedly authorizes arbitration with the NAF, it is unenforceable because the NAF no longer can arbitrate such disputes under the Consent Judgment. The severance provision indicates that the intention was not to make the NAF integral, but rather to have a dispute resolution process through arbitration. The existence of the severance language in the Arbitration Agreement is consistent with the agreement providing that disputes "be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility" and that any disagreement be resolved "not by a lawsuit or resort to court process." (Id. at Exhibit A); see Estate of Eckstein v. Life Care Centers of America, 623 F. Supp. 2d 1235 (E.D.Wash. 2009) (finding that unavailability of American Arbitration Association to hear case did not render agreement unenforceable, because designation of arbitrator was not a material term and noting the existence of severance clause in the agreement). The existence of the severance clause in the arbitration agreement is evidence that the parties did not intend for the entire agreement to fail if one portion was invalid or unenforceable.

The testimony of Plaintiff Carol Jones further supports the conclusion that the NAF provision was not integral to the arbitration agreement. The Court is mindful that the arbitration agreement is a standard form from Beverly Enterprises not negotiated by the parties. However, arbitration agreements in such form contracts are enforceable. See, e.g. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 64 (1995) (enforcing standard-form arbitration agreement in broker-dealer contract that was not negotiated by the parties); Houlihan v. Offerman & Co., 31 F.3d 692 (8th Cir. 1994) (enforcing form arbitration

agreement in broker-dealer contract despite lack of sophistication of the plaintiffs). Ms. Jones testified that she did not negotiate the Arbitration Agreement, did not remember the Arbitration Agreement itself, but did not doubt that she signed the document on behalf of her mother. (Doc. 42 at Exhibit C). Under such circumstances, the term specifying NAF rules was not integral to Ms. Jones' decision to sign the Arbitration Agreement.

The language in the arbitration agreement at hand is substantially similar to the language in Brown, which provided that "any dispute between [the parties] shall be resolved by binding arbitration under the Code of Procedure of the National Arbitration Forum." 211 F.3d at 1220. In Brown, the court concluded that there was "no evidence that the choice of the NAF as the arbitration forum was an integral part of the agreement to arbitrate." Id. at 1222. Likewise, there is no evidence here that the NAF as a forum was an integral part of the Arbitration Agreement.

The most recent district court decisions dealing with the unavailability of the NAF and appointment of a substitute arbitrator under Section 5 have reached different outcomes. Compare Adler, 2009 U.S. Dist. Lexis 112204 (E.D.Mich. Dec. 3, 2009) with Carideo, Case No. C06-177JLR (W.D.Wash. 2009). In both Carideo and Adler, the arbitration provisions provided that disagreements between the parties "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF)." This Court need not decide whether to follow the Adler or the Carideo court in its analysis, because the language of the Arbitration Agreement at hand is different.

Under all of the circumstances, the Court finds no reason to believe the specification

11

of the NAF rules was integral to the Arbitration Agreement. Thus, the Court finds that Section 5 of the Federal Arbitration Act authorizes and requires the Court to appoint an arbitrator.

## C. Application of SDCL 21-25A-9.

As discussed above, SDCL 21-25A-9 is consistent with the purposes of the Federal Arbitration Act and thus not preempted. The language of SDCL 21-25A-9 is directly on point, providing "if the agreed method [for appointment of an arbitrator] fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act . . ., the court on application of a party shall appoint one or more arbitrator." Here, to the extent the NAF Code was "the agreed method" or the NAF as a forum "fails or for any reason cannot be followed," SDCL 21-25A-9 directs the Court to appoint an arbitrator, separate and apart from the Federal Arbitration Act.

## IV. Method for Appointment of Arbitrator

Section 5 and SDCL 21-25A-9 provide limited guidance on how a court is to appoint an arbitrator. At oral argument, counsel for both Plaintiff and Defendants acknowledged that the Court has broad discretion in determining how to appoint an arbitrator. The Arbitration Agreement and 9 U.S.C. § 5 both contemplate a single arbitrator.

The Court is aware of three possible means to lead to the appointment of an arbitrator. The Court in the Adler case ruled:

> The court instructs the parties to confer and agree on an alternate arbitrator who will apply the rules of NAF under its Code of Procedure, if possible. If the parties fail to come to an agreement within 30 days from the date of entry of this order, either Defendants or Plaintiff may submit an application to the court identifying proposed arbitrator(s) for appointment. In the event the parties fail to agree on an alternate arbitrator and no

application is presented to this court for appointment by February 1, 2010,
this matter shall be dismissed without prejudice.

Adler, 2009 U.S. Dist. Lexis 112204 at 13-14.

Alternatively, invoking Section 5 of the Federal Arbitration Act, the court in Astra Footwear Industry v. Harwyn Intern. Inc., 442 F. Supp. 907, 911 (S.D.N.Y. 1978), ruled as follows:

> The parties are invited to submit in writing to the court...the names of
> possible alternate arbitrators. Should the parties fail together in agreeing
> upon one arbitrator, the court will designate one.

Id. at 911.

Finally, during oral argument, Plaintiff's counsel, without waiving his client's position that Section 5 did not authorize appointment of an arbitrator, suggested that the Court provide to counsel three names of possible arbitrators and allow counsel for each side to strike one name each, with the remaining individual being designated as the arbitrator. Counsel for the Defendants in this case was receptive to that method for appointing the arbitrator. The Court chooses a hybrid of these three approaches as the best way to lead to appointment of an arbitrator under these circumstances.

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion to Dismiss or Stay Proceedings and for Order Compelling Arbitration (Doc. 34) is granted in part in that the Court compels arbitration and stays this case under 9 U.S.C. § 3. It is further

ORDERED that Defendants' motion is denied to the extent that it seeks dismissal of the case. It is further

ORDERED that Plaintiff and Defendants notify the Court on or before February 19,

2010, of the name of an arbitrator that they have agreed upon for the Court to appoint, if they can so agree. It is further

ORDERED that if the parties cannot agree on an arbitrator that they notify the Court by February 19, 2010, either of (a) their desire for the Court to provide three names to them for each to strike one name and to arbitrate before the remaining individual; or (b) a list of individuals that both can agree upon as qualified arbitrators from which the Court can select one arbitrator.

Dated February 3, 2010.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE